## James Beatty, Appellant, v. Nicholas H. Larzelere.

*Attorney and client—Contract—Compensation—Parol evidence.*

Where a written agreement has been entered into between an attorney and his client, fixing the former's rate of compensation in litigation about to be begun, and the terms of this contract are fully understood by the client, the parties may subsequently, after a verdict has been obtained, enter into a new parol agreement, by which the attorney is to have all above a certain amount, if the verdict is maintained, and no compensation at all if it is less than the specified amount, and more than a certain other amount, and the attorney further obligates himself to render services that did not fall within the terms of his original contract.

Argued Jan. 29, 1900.   Appeal, No. 205, Jan. T., 1899, by plaintiff, from judgment of C. P. Montgomery Co., on verdict for defendant.   Before GREEN, C. J., McCOLLUM, DEAN, FELL and MESTREZAT, JJ.   Affirmed.

Assumpsit for money had and received.   Before SWARTZ, P. J.

At the trial it appeared that on March 16, 1889, plaintiff and defendant entered into the following agreement in writing:

"It is hereby agreed by and between James Beatty and N. H. Larzelere as follows, viz: Larzelere is to try the cases of said Beatty against the P. S. V. R. R. (land damage cases), now pending in the court of common pleas of Montgomery county. If settlement is effected by which the jury of viewers allow, compensation to be 2½ per cent.   If, however, appeals are taken and the cases determined by court trial, then 5 per cent. on the amount so determined."

When the cases were tried the verdicts aggregated $20,142.65.

Plaintiff then approached the defendant on the subject of a new agreement. The defendant testified on this subject as follows:

"He then said to me: 'Mr. Larzelere, I want $18,000 out of this case, and if you can hold this verdict and keep it from being paid into court, I give you all beyond that.' I said: 'Let us understand each other. I think the chances are very strong that the verdict will be reduced. Do you mean if this verdict is reduced to $17,000 or $15,000 that I am to receive nothing?' He said, 'Yes, that is what I mean. I am to get $18,000 out of the case, and all that is above that is yours, if you hold this verdict and keep the money from being ruled into court.' I said, 'I will have to think about that. If there is a new trial do you mean that I am to get nothing?' He said, 'Yes, that is what I mean.' I said I would not do that. I said, 'To what point would this verdict have to be reduced before you would take a new trial?' He said, 'If it is reduced below $13,000 I would then take a new trial.' I said, 'This is what I will do. I will hold this verdict if I can and save this money being paid into court, and I will take as my compensation for doing it all over $18,000, and if the verdict is reduced below $13,000 then you promise me that you will take a new trial instead of taking the reduced verdict, and then I am to have the usual pay, ten per cent, upon the retrial of the case,' and finally that was the agreement that was entered into. I said, 'Mr. Beatty, you got an agreement here, an old agreement. We will have to change that. Where is that?' He said, 'Oh, well that is down home. I do not know where it is. If I get it I will bring it to you or I will destroy it. That is no good.' That is all that was said at that time."

Defendant also agreed to undertake for plaintiff other litigation without compensation. The verdict in the land damage cases were maintained, and the defendant retained all over $18,000. This suit was brought to recover the difference between the amount retained and the five per cent rate specified in the original written agreement.

Plaintiff's points and the answers thereto were among others as follows:

4. If the defendant at the time of making the verbal contract did not tell the plaintiff that under the written agreement

he was bound to try to hold the verdicts and prevent them being reduced in amount without additional compensation, and if defendant did not also tell the plaintiff that under the written agreement he was bound to represent plaintiff in the Supreme Court if the cases were appealed there without additional compensation, the jury must find a verdict in favor of plaintiff. *Answer :* This is true, but if the evidence discloses to you, and you so find, that all these matters were fully understood by the plaintiff, then any further explanation by the defendant was unnecessary. [1]

7. After the written agreement was made and the verdicts obtained in the railroad cases, it was impossible for plaintiff and defendant to make a contract binding in law upon plaintiff by the terms of which defendant would receive additional compensation for trying to hold the verdicts or taking the cases to the Supreme Court, and if the defendant agreed to perform services in the Collins case and the jury find such services were performed and payment for them was not included under the terms of the written agreement, and defendant was not thereafter paid for them, then defendant could only deduct from the moneys in his hands coming from the railroad cases, in addition to five per cent, such compensation as his services in the Collins case were reasonably worth; and the defendant having offered no testimony as to the reasonable charges for such services, the jury must find a verdict in favor of the plaintiff for the full amount of his claim. *Answer :* This is true. That is, the statements and propositions in this point are affirmed. But it does not follow as a legal conclusion that the verdict must be rendered for the plaintiff. While the defendant could not make any binding contract which gave him additional compensation for the work he had agreed to do under the written contract, so long as the plaintiff's rights remained unchanged, still the parties had a right to abrogate the old contract and make a new one whereby the respective rights and obligations of the parties were modified and new advantages to both parties were introduced, providing the jury find such a new contract was fair and not unconscionable, and that no advantage was taken by the defendant by reason of his relation of attorney to the plaintiff, and the burden to show such fairness is on the defendant. [2]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1, 2) above instructions, quoting them.

*Joseph R. Embery*, with him *John Eckstein Beatty*, for appellant.—While the relation of client and counsel subsists in its full vigor, the attorney can derive no benefit to himself from the contracts, or bounty, or other negotiations with his client: Story's Eq. Jur. sec. 310; Weeks on Attorney, sec. 364; Lecatt v. Sallee, 3 Porter, 115.

*William F. Solly* and *Montgomery Evans*, for appellee, were not heard.

PER CURIAM, February 12, 1900:

The contest in the court below turned upon the question whether a new parol contract was made between the parties after the written contract was made, and its execution had been proceeded with to a certain stage. The learned court below fairly and correctly submitted that question to the jury with appropriate instructions, and the jury found in favor of the defendant. There was a sufficiency of testimony to warrant the submission of the question to the jury, and to sustain their verdict. There is no legal difficulty in the way to disable the parties from making such an agreement, and the agreement itself, if and when, subsequently made, and upon the consideration which moved the parties to enter into it, does not in the least infringe upon the rule which prohibits the giving of parol proof to alter or contradict the terms of a written instrument. The assignments of error are without merit and are dismissed.

Judgment affirmed.